UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMNI INNOVATIONS, LLC, a Washington limited liability company; and JAMES S. GORDON JR.<br>Plaintiffs,<br>v.<br>SMARTBARGAINS.COM, LP, a Delaware Limited Partnership;<br>Defendant. | No. CV 06-1129 JCC<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS |

**INTRODUCTION**

**1.** Defendant Smartbargains.com, LP ("Smartbargains"), seeks dismissal of Plaintiffs' claims under the CAN-SPAM Act of 2003, 15 U.S.C. § 7701 et seq. ("CAN-SPAM"), arguing that this Court's dismissal of *Gordon v. Virtumundo, Inc.*[1] warrants dismissal of the instant case. But, issue preclusion (collateral estoppel) is not applicable here. In *Virtumundo* the Court determined, at summary judgment, that Plaintiffs lacked standing because they were unable to show "adverse effect" from the e-mails sent by Virtumundo, the defendant in that case. Here, the case involves an entirely different set of e-mails, sent by a different defendant, Smartbargains. When the "transactional nucleus of facts" in two cases are different, issue preclusion is not appropriate.[2] The

---
[1] Case No. 06-0204-JCC, *Order* entered May 15, 2007, Dkt. No. 121.
[2] *Shapley v. Nevada Bd. of State Prison Comm'rs* 766 F.2d 404, 407 (9th Cir. 1985) (internal quotes omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 1

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

legal bases for the actions are the same, but the evidence in each of these cases will be entirely different because they involve entirely different e-mails. Plaintiffs have not had a "full and fair opportunity" to litigate and present evidence on what adverse effects they have suffered from spam sent by Smartbargains.

    **a.** Plaintiffs also did not have a "full and fair opportunity" to litigate in *Virtumundo* the full extent of adverse effect to them, and accordingly should be permitted to litigate that issue here. In *Virtumundo*, the Court denied standing because as a matter of first impression, it construed CAN-SPAM to require that a Plaintiff must show "ISP- or IAS-specific damages" amounting to "substantial actual harm."[3] However, Plaintiff had no way of knowing that he would be required to make these showings because no such standard is expressly set forth in the statute, and no Court had previously interpreted the statute in that fashion. Accordingly, Plaintiff did not have an opportunity to argue how it met that standard, because the standard was articulated for the first time in the Order granting summary judgment. Now that the Court has set the standard, Plaintiffs should have an opportunity in this case to directly meet the Court's concerns and show that Plaintiffs have in fact incurred substantial actual harm, as an IAS, from the receipt of thousands of Smartbargains spam directed to the e-mail accounts maintained for its clients.

    **b.** Additionally, Plaintiffs have not had a "full and fair opportunity" to litigate the adverse effects they have suffered by receiving spam <u>in general</u>. Now that the Court's standard is known, it is apparent that Plaintiffs have not had an opportunity to address, and the Court has not had an opportunity to fully consider, all aspects of the damage caused by spam – most particularly, its cumulative effect as it is received by a server from multiple known and unknown sources, and the contribution of each source towards that cumulative adverse effect. In addition to adverse effects caused by

---

[3] *Virtumundo* Order of May 15, 2007, at 13:12-13, 14:25.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 2

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

Smartbargains spam alone or Virtumundo spam alone, Plaintiffs have had no opportunity to show the broader, cumulative adverse impact of spam in general and Smartbargains's contribution to those adverse effects on Plaintiffs' IAS services. This aspect of "adverse effect" was not litigated in *Virtumundo*, and accordingly no issue preclusion could apply.

      **c.** In the alternative, if the Court does not deny this Motion to Dismiss, then as a matter of judicial economy, the Court should simply stay this matter until the pending appeal of the Court's ruling in *Virtumundo* is resolved.

      **2.** Defendant also argues that Plaintiffs' claims under the Washington Commercial Electronic Mail Act (Ch. 19.190 RCW, "CEMA")[4] should be dismissed under CR 12(b)(6) because the false and/or missing heading information in Defendant's e-mails described in Plaintiffs' First Amended Complaint ("FAC") are not "material" violations of state law.[5] Falsified header information (including false IP addresses and date and time stamps) is one tactic used by spammers – not necessarily to deceive recipients per se, but to deceive recipients' e-mail software designed to classify e-mail and reject spam. Such deception is material because it is deliberately designed to prevent the recipient, via her/his software, from being able to correctly assess whether or not to reject the e-mail. This sort of deception is a key concern of CAN-SPAM and CEMA, both of which expressly prohibit false or misrepresented header information. As a CR 12(b)(6) matter where all facts are construed in the light most favorable to Plaintiffs, the Court could not say at this time that (a) mismatched, missing, or affirmatively false IP addresses and host names, and (b) deleted or obscured transmission dates and times, are never under any circumstances material violations of CEMA. Plaintiffs must be

---

[4] And thereby also claims under the Washington Consumer Protection Act (Ch. 19.86 RCW, "CPA") since a violation of CEMA is automatically a violation of CPA. RCW 19.190.030.

[5] Defendant makes the same argument twice, first as if it were "issue preclusion" because in *Virtumundo* the Court held that CAN-SPAM pre-empts CEMA except as to materially false or deceptive acts and omissions, and second as a 12(b)(6) argument because the false or deceptive acts or omissions advanced by Plaintiff are not material.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 3

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

accorded a full and fair opportunity to litigate with the Defendants whether these inaccuracies in Defendants' e-mail are materially false or deceptive.

**3.** Finally, the Court in *Virtumundo* did not consider a further violation of CEMA at issue here: that some of the Smartbargains E-mails used the Internet domain name of a third party or third parties without permission. This is a wholly separate type of false or deceptive act prohibited by CEMA that was not raised in *Virtumundo*.

**4.** The Court's ruling in *Virtumundo* that Plaintiff failed to show adverse effect from one set of e-mails does not mean that Plaintiff should be denied an opportunity to be heard and to show adverse effect from a different set of e-mails. Defendant's Motion to Dismiss should be denied.

## ISSUE PRECLUSION STANDARD

**5.** Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). Here, Plaintiffs agree that they were Plaintiffs in *Virtumundo*, and that *Virtumundo* was resolved by a final order on summary judgment. Accordingly, the sole element at issue here is whether the issue decided in *Virtumundo* – Plaintiffs' standing on the basis of "adverse effect" to Plaintiffs from Virtumundo's e-mails – is identical to the standing issue here. For the reasons set forth below, it is not.

### ADVERSE EFFECT FROM VIRTUMUNDO E-MAILS IS NOT IDENTICAL TO ADVERSE EFFECT FROM SMARTBARGAINS E-MAILS

**6.** The 9th Circuit has repeatedly held that issue preclusion (collateral estoppel) applies only when the issues presented in each matter are identical. The doctrine is

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 4

inapplicable if the issues are merely similar. *See, e.g., Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992), *Shapley v. Nevada Bd. of State Prison Comm'rs* 766 F.2d 404, 408 (9th Cir. 1985). In *Fund for Animals*, the Court held that a 1985 ruling against Fund for Animals, finding that no environmental impact statement (EIS) was required for the Government's 1985 bison management plan for Yellowstone National Park, did not collaterally estop a new lawsuit by the same plaintiffs regarding lack of an EIS for the Government's 1990 bison management plan, which was significantly different from the 1985 plan. In *Shapley*, the Court held that Mr. Shapley, a Nevada state prisoner, was not estopped from pursuing a second case alleging the same cause of action – deliberate medical indifference in treatment of a specific 1978 knee injury – because the first case alleged acts of withholding medications and placing him in a cell farther from the mess hall while simultaneously refusing to allow him to eat in his cell, whereas the second case alleged a five-year delay in surgery necessary to repair the injury. The Court specifically noted that collateral estoppel was not appropriate because "although the two suits do involve infringement of the same right...they do not arise out of the same transactional nucleus of facts." 766 F.2d at 407 (internal quotes omitted).

    **7.** Here issue preclusion is not appropriate because "adverse effect" of e-mails <u>sent by Virtumundo</u> is not the same as the "adverse effect" of an entirely different set of e-mails <u>sent by Smartbargains</u>. A superficial resemblance between causes of action, or even identical causes of action, should not lead the Court to estop litigation that does not involve the same "transactional nucleus of facts." Were the Court to collaterally estop this case without giving Plaintiffs even an opportunity to prove adverse effect from an entirely different set of e-mails, the Court would effectively be ruling that Plaintiffs could not, under any circumstances, no matter the amount of spam or its source, suffer "significant actual harm" sufficient to have standing under CAN-SPAM. This clearly is

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 5

1 an improper result, and Plaintiffs should be allowed to present evidence. This Motion to
2 Dismiss should be denied.

#### PLAINTIFF HAS NEVER HAD OPPORTUNITY TO FULLY ADDRESS THE "SUBSTANTIAL ACTUAL HARM" STANDARD

**8.** Plaintiffs also did not have a "full and fair opportunity" to litigate in *Virtumundo* the full extent of adverse effect to them, and accordingly should be permitted to litigate that issue here. In *Virtumundo*, the Court denied standing because as a matter of first impression, it construed CAN-SPAM to require that a Plaintiff must show "ISP- or IAS-specific damages" amounting to "substantial actual harm."[6] Plaintiff had no opportunity to argue how it met that standard, because the standard was articulated for the first time in the Order granting summary judgment.

**9.** Plaintiff can show "ISP- or IAS-specific burdens" from spam that are "significant," if given the opportunity in this case. Plaintiffs own and operate a small ISP, and the Court acknowledged in *Virtumundo* that Plaintiffs are an IAS within the scope of CAN-SPAM's definition.[7] Among other things, Plaintiff has been forced to upgrade his servers as a result of spam, he has been forced to install additional software, and all of this came at great expense to a small Internet Access Service operated by an individual. These adverse impacts are clearly specific to ISPs of all sizes and types. In contrast, the ordinary email user does not have a dedicated server, maintains one or two e-mail accounts by soliciting the services of an ISP such as Plaintiffs, and does not have to spend additional money to upgrade her/his account as a result of spam – because the ISP does that for its clients. Plaintiffs' damages are "ISP- or IAS-specific burdens" and the attendant cost of these burdens is "significant," particularly relative to the small size of Plaintiffs' ISP.

---

[6] *Virtumundo* Order of May 15, 2007, at 13:12-13, 14:25.
[7] *Virtumundo* Order of May 15, 2007, at 13:10-12.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 6

SAYRE LAW OFFICES
1016 JEFFERSON ST
SEATTLE WA 98104-2435
206/625-0092
FAX 206/625-9040

1     **10.** To collaterally estop Plaintiffs here by application of the *Virtumundo* standing ruling would bar him from any possible remedy. Plaintiff is his own ISP. He does not maintain e-mail accounts with Comcast or Hotmail; he leases his own dedicated server. He cannot rely on a "big" ISP to bring suit on his behalf. His only hope to stop the deluge of spam is to sue the spammers himself. Applying *Virtumundo* to this case <u>without giving Plaintiffs to present evidence of adverse effect</u> would effectively state that no matter what amount of spam Plaintiffs might receive, no matter what its effect, Plaintiffs could never have standing.

### CUMULATIVE ADVERSE EFFECT OF SPAM FROM MULTIPLE SOURCES, AND DEFENDANT'S CONTRIBUTION TO THAT ADVERSE EFFECT, HAS NOT BEEN LITIGATED

    **11.** Additionally, Plaintiffs have not had a "full and fair opportunity" to litigate the adverse effects they have suffered by receiving spam <u>in general</u>. As detailed in the previous section, one of the significant burdens caused by spam is its sheer cumulative volume from many sources. The Congressional findings cited by the Court in *Virtumundo* make this clear, but the implications are not fully analyzed. Logically, an ISP cannot sue one spammer for all the spam that the ISP receives, because they come from dozens if not hundreds of sources, only some of which are identifiable. If CAN-SPAM is to have any effect at all, it must be possible for an ISP to sue a single spammer, for a limited number of e-mails, without having to prove "substantial actual harm" arising directly from those specific e-mails. Instead, all that should be necessary is to show that the ISP is "adversely affected" by spam <u>in general</u>, and that the specific defendant's e-mails violating the statute were contributory. This aspect of "adverse effect" was not litigated in *Virtumundo*, and accordingly no issue preclusion could apply.

///

///

///

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 7

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

### IN THE ALTERNATIVE, A STAY PENDING RESOLUTION OF THE *VIRTUMUNDO* APPEAL IS APPROPRIATE

**12.** In the alternative, if the Court does not deny this Motion to Dismiss, then as a matter of judicial economy, the Court should simply stay this matter until the pending appeal of the Court's ruling in *Virtumundo* is resolved. *See Leyva v. Certified Grocers of California*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."). Were the Court to determine that Plaintiffs have no standing under the "substantial actual harm" standard articulated in *Virtumundo*, and then *Virtumundo* were to be reversed, the Court would have needlessly expended its resources in making multiple rulings in multiple cases on the same reversed standard, necessitating additional resources to reinstate the cases and allow them to proceed. The entire problem could be avoided simply by staying proceedings pending the appeal.

### MOTION TO DISMISS STANDARD

**13.** Other than jurisdictional facts and a request for relief, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief..." F.R.Cv.P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." F.R.Cv.P. 8(e)(1). "All pleadings shall be so construed as to do substantial justice." F.R.Cv.P. 8(f).

**a.** In construing these rules, dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[8] Review is limited to the FAC itself,[9] and all factual

---

[8] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[9] *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 8

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

1  allegations set forth therein are taken as true and construed in the light most favorable to
2  the Plaintiffs.[10]

3        **b.** Under F.R.Cv.P. 12(b)(6), "A court may dismiss a complaint only if it
4  is clear that no relief could be granted under any set of facts that could be proved
5  consistent with the allegations."[11] Motions to dismiss generally are viewed with disfavor
6  under this liberal standard and are granted rarely.[12] Even the mere "possibility" of a
7  cognizable claim is sufficient to defeat dismissal.[13] The court should be particularly
8  hesitant to dismiss at the pleading stage those claims asserting novel legal theories,
9  where the claims could be better examined following the development of the facts
10 through discovery.[14]

**INCOMPLETE OR FALSIFIED HEADER INFORMATION IS A MATERIAL VIOLATION OF CAN-SPAM AND CEMA BECAUSE IT IS INTENDED TO BYPASS ANTI-SPAM SOFTWARE**

**14.** Defendant in this case has blurred the requirements of CAN-SPAM and CEMA by asserting that the statutes do no more than prohibit misrepresentations that "prevent a recipient from easily identifying the sender of an e-mail." *Motion to Dismiss*, at 11:22-23. This discredits the sophistication of the U.S. Congress and the Washington Legislature. <u>Of course</u> spam and other commercial e-mail identify the sender. It would be pointless to send out commercial solicitations without giving the recipient a means of entering into commerce with the sender. It would be absurd for Smartbargains to send an e-mail labeled "40% OFF ALL BED AND BATH ITEMS" and <u>not</u> provide some type of link to their website.

---

[10] *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).
[11] *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Argabright v. United States*, 35 F.3d 472, 474 (9th Cir. 1994).
[12] *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).
[13] *Carparts Distrib. Ctr. v. Automotive Wholesaler's Ass'n. of Ne England, Inc.*, 37 F. 3d 12, 17 (1st Cir. 1994).
[14] *McGary v. City of Portland*, 386 F. 3d 1259, 1270 9th Cir. 2004); *Baker v. Cuomo*, 58 F.3d 814, 118-819 (2d. Cir. 1995).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 9

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

**15.** Instead, CAN-SPAM and CEMA both expressly prohibit misrepresentation of the sending <u>computer's</u> identity, as expressed in header and transmission information:

> (1) It is unlawful for any person to initiate the transmission...of a commercial electronic mail message, that contains, or is accompanied by, <u>header information that is materially false or materially misleading</u>. For purposes of this paragraph --
> ...
> (C) header information shall be considered materially misleading if it fails to identify accurately a protected computer used to initiate the message because the person initiating the message knowingly uses another protected computer to relay or retransmit the message for purposes of disguising its origin.

15 U.S.C. § 7704(a)(1) (emphasis added).

> No person may [initiate or assist] the transmission, of a commercial electronic mail message... [to a Washington resident] that:... <u>misrepresents or obscures any information in identifying the point of origin or the transmission path</u> of a commercial electronic mail message..."

RCW 19.190.020(1) (emphasis added).

**16.** This is a more sophisticated understanding than the simplistic view advocated by the Defendant. Both legislatures were well aware that one of a spammer's chief weapons to ensure that spam reaches recipients is to delete or falsify header information (which includes IP origin and transmission information), so that the spam's point of origin, or a common relaying point along its transmission route, is not identified and placed on anti-spammers' blacklists of servers known to be used for spamming. Spammers go to great lengths to avoid identification of their points of origin, and have developed viruses specifically to create "zombie" servers out of unsuspecting Internet users' computers, so the innocent user's server is blacklisted instead of the spammer's. This tactic is expressly prohibited in CAN-SPAM:

> Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading.

15 U.S.C. § 7704(a)(1)(A).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 10

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

17. Furthermore, it would be a mistake to treat the statutes' use of "misrepresent" in relation to these technical issues <u>only</u> under traditional concepts of fraud and misrepresentation. In a natural human language, shades of meaning, evasions, circumlocutions, euphemisms, and half-truths can all be used to seem to convey one meaning while concealing the truth. This is the essence of ordinary misrepresentation and such tactics properly are prohibited by CAN-SPAM and CEMA. But these are not the only types of misrepresentation so prohibited; CAN-SPAM and CEMA both expressly prohibit misrepresentation in an e-mail's technical data – header information – as well. There, natural language concepts of misrepresentation simply are not applicable, where every single digit or letter has one and only one meaning. In the context of e-mail, the difference between "100.0.0.254" and "101.0.0.254" as an IP address is neither slight nor insignificant; it is everything. It is the same as the difference between dialing 206-625-0092 and 206-625-0093 on the telephone.

18. It is worth noting that a computer does not "accidentally" stamp the wrong IP address on an e-mail. Computers do not make "typos." It requires deliberate intervention in order to change header information. That intervention is evidence of deceptive intent.

19. When the alteration of even a single digit in an address is a critical change, accurate and complete header and transmission information is essential if a recipient is to have any means of classifying, sorting, evaluating, and effectively accepting or rejecting a particular e-mail – most especially when one receives hundreds if not thousands of e-mails in a single day and those classification processes are automated. <u>Deliberate alteration of header and transmission information is material</u>. It is expressly so stated in CAN-SPAM and in CEMA.

20. The cases cited by Defendant never expressly considered, on the basis of evidence presented by the parties, whether "IP address and host name information that

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 11

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

does not match, or is missing or false" constitutes a "material" violation of the CAN-SPAM Act with reference to its purpose in evading anti-spam measures. In *Benson v. Oregon Processing Service, Inc.*,[15] Division II of the Washington Court of Appeals held only that CEMA does not require a recipient of a commercial e-mail to be able to contact the sender by a "reply" e-mail. 136 Wn. App. at 593. The issue of falsified headers did not arise: The Court specifically found that "OPS's domain names are the e-mail messages' point of origin and each e-mail contains the transmission path from OPS's servers to Benson's e-mail addresses." *Id.* at 592-593. In *Omega World Travel, Inc. v. Mummagraphics, Inc.*,[16] the 4th Circuit focused entirely on whether the header would be "false or misleading" in relation to a <u>person</u> attempting to find the originator of the e-mail, rather than anti-spam software set up to process e-mail. The opinion is entirely lacking in analysis of the technical consequences of altered e-mail headers.

**21.** The Court could only deny this 12(b)(6) motion if the Court could say unequivocally that Plaintiffs will never, under any facts consistent with their Complaint, be able to prove that altered or obscured header information is material. With respect, Plaintiffs urge the Court to recognize that this is simply not the case, and the Motion to Dismiss should be denied, accordingly.

                              SAYRE LAW OFFICES

                              /s/ Eric C. Nelsen

DATE: October 1, 2007.       By:_____
                                            Eric C. Nelsen
                                            Washington Bar No. 31443
                                            SAYRE LAW OFFICES
                                            1016 Jefferson Street
                                            Seattle WA 98104-2435
                                            Telephone: 206/625-0092
                                            Fax: 206/625-9040
                                            eric@sayrelawoffices.com
                                            **Attorneys for Plaintiffs**

---

[15] 136 Wn. App. 587 (2007).
[16] 469 F.3d 348 (4th Cir. 2006).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 12

SAYRE LAW OFFICES
1016 Jefferson St
Seattle WA 98104-2435
206/625-0092
fax 206/625-9040

| | |
|---|---|
| 1 | <div align="center">CERTIFICATE OF SERVICE</div> |
| 2 | I hereby certify that on October 1, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of |
| 3 | such filing to the following: |
| 4 | Derek Alan Newman |
|   | derek@newmanlaw.com |
| 5 | |
|   | Randall Moeller |
| 6 | randy@newmanlaw.com |
| 7 | and I hereby certify that on the date set forth above I also mailed by United States Postal Service, first-class postage prepaid, the foregoing document to the following non- |
| 8 | CM/ECF participants: |
| 9 | None. |

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Derek Alan Newman
derek@newmanlaw.com

Randall Moeller
randy@newmanlaw.com

and I hereby certify that on the date set forth above I also mailed by United States Postal Service, first-class postage prepaid, the foregoing document to the following non-CM/ECF participants:

None.

SAYRE LAW OFFICES

/s/ Eric C. Nelsen

DATE: October 1, 2007.    By:_____
Eric C. Nelsen
Washington Bar No. 31443
SAYRE LAW OFFICES
1016 Jefferson Street
Seattle WA 98104-2435
Telephone: 206/625-0092
Fax: 206/625-9040
eric@sayrelawoffices.com
**Attorneys for Plaintiffs**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CAN-SPAM CLAIMS - 13